JONATHAN B. and GEORGE SPENCER *vs.* WILLARD DAGGETT.

That a Captain of a canal boat sailing on *Lake Champlain*, and carrying goods for hire, is liable as a *common carrier*.

That, if the loss be occasioned by the *act of God*, defendant is excused; if by his own default in landing or navigating, he is liable.

That in civil actions, the defendant is not entitled to a verdict, merely because the jury have doubts about sufficiency of proof.

This was an action upon the *Case*, against the defendant, for negligence in lading and transporting the goods of the plaintiffs from *Whitehall* to *Vergennes*. The declaration described the goods particularly, and the charges against the defendant were framed in due form as against a *common carrier*: it was alleged he carried too large a load, and badly placed the goods on board his canal boat, with too great a portion of them upon deck; and also that he carelessly, &c. managed said boat, so that it was upset in a gale of wind, and the goods lost.

The defendant pleaded not guilty, and the cause was tried by a jury, who returned a verdict for the plaintiffs.

On the trial the plaintiffs introduced testimony tending to show, that they employed the defendant, as *a common carrier*, to carry the goods in question from *Whitehall* to *Vergennes*, as stated in the declaration; and tending to show, that the defendant put the same, with other goods, on board his canal boat; that he put too much lading into said boat, and placed too great a portion of it

upon deck; that he navigated the same down *Lake Champlain,* in the night, so imprudently, in so heavy a wind, and carried so much sail, that the said boat upset, and sunk, and part of the goods of the plaintiffs were wholly lost, and otherwise more or less injured.

ADDISON,
January,
1829.

Spencers
*vs.*
Daggett.

The defendant introduced testimony tending to shew, that his lading was a suitable one for said boat to carry, and was properly put on board, with a reasonable portion of it only upon deck; that he sailed with a safe, gentle breeze only, when he could see well to manage the boat; that he carried no more sail than was safe, and prudently managed and navigated the boat; and that, when turning eastward with the channel, near *Ticonderoga,* a sudden, and very heavy flaw of wind struck the sails and capsized the boat, in an instant, without the fault of the defendant. There was much testimony, showing, that the lake was subject to sudden gusts of wind, in various directions, but not such as often to capsize loaded sloops or boats. There was also testimony, tending to shew, that the flaw which capsized the defendant's boat, was from a direction, a little west of south; from whence the wind had blown for several hours previous.

The Court instructed the jury, that they must ascertain, from all the testimony, what lading the defendant's boat would safely carry; what weight was in fact on board, when she sailed, and sunk; whether the same was suitably placed upon the boat; whether only a reasonable portion of it, in weight and bulk, was placed upon deck; and how heavy the wind blew during the afternoon and evening before, and at the time of, the sinking of the boat; what quantity of sail was spread, and what winds were common, and might reasonably be expected, in navigating said lake: and if they should find, that the defendant's boat was properly laden and managed, and that the flaw of wind, that capsized her, was *unheard of,* or one that very *rarely occurs* on the lake, they might consider the disaster as the *act of God,* and find a verdict for the defendant: But that, it was the duty of the defendant to so load and manage his boat, as to bear up against those obstacles that were common, and might reasonably be expected, in navigating the lake. If, therefore, they should find that the defendant had so laden his boat, either by putting on too much weight, or improperly placing too much upon deck, or carried too much sail, and that the wind, which capsized the boat, was only such an one as was common, and might reasonably be expected during said voyage, they ought to find for the plaintiff.

On the jury's coming into Court not agreed, and requesting further instructions from the Court, the defendant requested the

ADDISON,
January,
1829.

Spencers
vs.
Daggett.

Court to instruct them, that, if they were in doubt about the facts in the case, they ought to find for the defendant. The Court refused so to charge; but did inform the jury, that the Court do not instruct in civil cases as in criminal cases—that a doubt should operate in favor of the defendant; and that it was now their duty to examine the testimony carefully, and examine what facts were proved—and repeated to the jury the concluding part of the charge first given.

The defendant excepted to the charge of the Court, and removed the cause to this Court on a motion for a new trial.

*Argument for the defendant.*—1st. The defendant insists, that the Court were wrong in charging the jury, that the wind, which upset the vessel, must have been a wind "unheard of, or one that rarely occurred on the lake," in order to constitute the accident an act of God. They ought to have charged, that the defendant, having reference to the appearance of the weather at the time, and preceding, should have been prepared for any accident, which the most vigilant man would have expected, under such appearances and circumstances as existed at the time. 1 *Strange,* 128.—6 *Johnson,* 160.

2nd. There are many cases, where the testimony is so equally balanced, that it is impossible to decide, on which side the preponderance lies. It is the right of the defendant, if he request it, in a case where this may exist, to have the jury informed, that by the rules of law, in such cases, their verdict ought to be for the defendant.

*Argument for the plaintiff.*—The settled law on this subject is, that the carrier is responsible for all loss or damage, as an insurer, except what arises from the *act of God*, or the public enemies: and, in the application of this rule, the common and ordinary dangers of the voyage—those risks which may reasonably be expected, and against which skill and prudence may guard, have never been considered as the *act of God*: but for all the losses and damage, from that source, the carrier is responsible. The Court instructed the jury, that, if they found that the boat was properly laden and managed, and that the flaw, which capsized it, was of rare occurrence, they should find for the defendant. Under this point of the charge the jury could not find for the plaintiffs, unless they found that there was a default on the part of the defendant, and that the accident was owing to such an occurrence, as might have been avoided. The Court then proceeded to charge that if the defendant overloaded his boat, &c. and the wind which capsized the boat was a common and ordinary occurrence, and might have been expected,

that the defendant was liable. Now, nothing can be clearer than that it was the duty of the defendant so to lade, and manage his boat, as that she might withstand the ordinary winds on the lake: and that if the defendant so laded, as not to be able to sail with the ordinary winds, and the goods were lost in consequence, he must be liable. In short, the Court put it to the jury to determine the fact, whether the loss was occasioned by the mismanagement of the defendant, or to such a dispensation of Providence as could not reasonably be anticipated.

As to the supplementary charge of the Court, the defendant was in a great error when he requested the Court to charge, that, if the jury were in doubt about the facts, they should find for the defendant. No such rule obtains in civil cases; and it certainly, was not the duty of the jury, merely because they found the case involved in difficulty and doubt, by a mass of complicating evidence, to find of course for the defendant. It was their duty, as they were instructed by the Court, to examine the testimony, and ascertain what facts were proved, and find their verdict accordingly. *See* 1 *Swift's Digest*, 391.

The opinion of the Court was, at a subsequent period, delivered by

HUTCHINSON, J.—There are two exceptions, only, in this case ; one relates to the charge upon the merits of the action ; the other to the instructions when the jury came in not agreed. We will dispose of this first. The defendant requested the Court to charge the jury, that, if they doubted about the fact, they must find for the defendant. This the Court refused; and correctly too, as this Court adjudge. We so charge in criminal cases, because it is the law that we should so charge; and because that law is as it should be ; for no man should be convicted of a crime, while the jury entertain any rational doubt of his guilt. But it is not so in civil causes. The law is not so : neither is it practised in any Courts whatever. The doubting of the jury, in a civil cause, may be a good reason for receiving back the papers, and letting the cause stand over for another jury to try ; but is no reason for directing a verdict for the defendant. Where the testimony is all on one side, the jury cannot find for the party holding the affirmative, until they believe the facts proved : and so they are always charged by the Court. Therefore, the Court's saying to the jury, if you believe this, you will find for the plaintiff; otherwise, for the defendant, is all to which the defendant is entitled, in such a case. This finding must be on the preponderancy of the testimony, and not on such a freedom from doubt as required in a criminal case.

We pass to a consideration of the charge upon the merits of the case. The defendant's counsel place the main force of their exception upon one expression in the charge, to wit, " a flaw of wind *unheard of,* or such as rarely occurs." Were we to give as great emphasis to this expression as do the defendant's counsel, and take the same so disconnected from what follows, as they do, we should find difficulty in reconciling the charge to the principles of law. At the same time, it cannot escape our notice, that the charge gives the cause to the defendant, if the jury should find that the wind which upset the boat was either of the two named, to wit, a wind *unheard of,* or one that rarely occurs. But, when we read what follows in the charge, we there find a very explicit instruction upon what ground they might find for the plaintiffs. And all those grounds require evidence of a fault or neglect in the defendant; and exclude every thing that might be considered the act of God. The court in pointing out on what grounds the plaintiffs may recover, first describe the duty of the defendant in executing his trust; that he should so lade and navigate his boat that he could go safely when meeting nothing but the ordinary occurrences of the voyage; then tell the jury that, if the defendant put too much load upon his boat, or imprudently placed too much upon deck, or navigated with too much sail, and that, the wind, which upset the boat was only such as was common, and might reasonably be expected during the voyage, they ought to find for the plaintiffs. This was, also, the concluding part of the instructions given, when the jury came into court for further instructions. The counsel have not contended but that the defendant's liability stood upon the principles of *a common carrier*. It should so stand. He carries for hire. The plaintiffs could not controul him in the manner of lading and navigating his boat. They cannot be supposed to have felt it their business to ascertain when he stopped lading, upon his boat, the property of others to increase his load; nor can it be supposed that the plaintiffs had skill to decide upon those matters which the defendant must know and do at his peril. All must be at the risk of the defendant, so far as any imprudent act of his occasioned the loss.

The jury could not have been misled by the instructions given. If the wind was *unheard of,* or was one that rarely occurs on the lake, they must have considered the loss as occasioned by the *act of God.* If several other things concurred ; if the wind was only such as, from its frequent occurrence, might reasonably be expected, and the boat was badly laden, or badly navigated, they might consider the loss as occasioned by the fault or neglect of the defendant. The judgment of the County Court must be affirmed.

Judgment affirmed.

*Phelps* and *Hawley,* for the plaintiffs.
*Bates* and *O. Seymour,* for the defendant.